NICHOLS KASTER, LLP
Matthew C. Helland, (CA Bar No. 250451)
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Fax: (415) 277-7238

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
John G. Albanese, MN Bar No. 0395882*
jalbanese@bm.net
100 South Fifth Street
19th Floor
Minneapolis, MN 55402
Phone: 800-424-6690
Fax 215-875-4604

*admitted *pro hac vice*

Attorneys for Individual and Representative Plaintiffs
[Additional Counsel for Plaintiffs and Defendant on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric Halvorson, Laura Ferrer, Peter Dallman, Robert Grana, Dennis Bulcao, and Neil Young, individually, as representatives of the classes, and on behalf of the general public,<br><br>　　　　　　　　　Plaintiffs,<br>v.<br><br>TalentBin, Inc.,<br><br>　　　　　　　　　Defendant | Case No. 15-cv-05166-JCS<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND [PROPOSED] ORDER**<br><br>Judge:　Hon. Joseph C. Spero<br>Date: February 12, 2016 at 2:00 p.m.<br>Courtroom: G<br>Complaint Filed:<br>October 2, 2015 |

　　　Plaintiff Eric Halvorson, Laura Ferrer, Peter Dallman, Robert Grana, Dennis Bulcao, and Neil Young ("Plaintiffs") and TalentBin, Inc. ("Defendant" or "TalentBin") (collectively, the "Parties") jointly submit this JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated August 25, 2014 and Civil Local Rule 16-9.

Items discussed pursuant to the Standing Order for all Judges of the Northern District of California:

## I. JURISDICTION & SERVICE

This Court has jurisdiction of the claims asserted in the Class Action Complaint under federal question jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1441(a), and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. There presently are no issues regarding venue or personal jurisdiction, there are no counterclaims, and no other parties that remain to be served at this time.

## II. FACTS

### A. Plaintiffs' Synopsis

This consumer class action alleges violations of the Fair Credit Reporting Act ("FCRA") and the California Investigative Consumer Reporting Agencies Act ("ICRAA"). Defendant operates a website and online tool that gathers information from various online sources regarding job seekers, and then compiles that information into a "candidate profile." This information is gathered from social media sources such as Twitter and Facebook and can include photographs of the consumer, and information relating to job history, professional interests, personal interests, and summaries of the consumer's behavior on various social media sites. Defendant further scores consumers based either on a numerical scale from 1 to 100 or a "star rating" from one to five stars. Defendant sells access to these candidate profiles through monthly subscriptions and encourages its customers to use the candidate profiles for employment purposes.

The information gathered by Defendant is often inaccurate and is neither authorized nor verified by the consumer. In many instances, the consumer is entirely unaware that Defendant is gathering this information and selling it to prospective employers. Defendant's co-founder has acknowledged that the gathering and assembling of personal information on individuals without their knowledge or consent is "creepy." Further, in order to view his or her profile on Defendant's website, a consumer is required to fill out a form that requests that Defendant remove the profile. Even if a consumer submits a removal request, Defendant does not guarantee that a consumer's profile will stay removed.

The definition of a consumer report includes any "information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living is used *or* expected to be used . . . employment purposes." 15 U.S.C. § 1681a(d). A consumer reporting agency is "any person which, for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Because Defendant assembles and evaluates information on consumers and then sells that information to third parties for employment purposes, Defendant is a "consumer reporting agency" and its "candidate profiles" are "consumer reports" within the meaning of the FCRA. For these same reasons, Defendant is an "investigative consumer reporting agency" and the profile Defendant creates is an "investigative consumer report" within the meaning of the ICRAA. *See* Cal. Civ. Code §§ 1786.2(c), (d). Defendant, however, follows none of the procedures required by the FCRA and ICRAA designed to protect consumer privacy and ensure accuracy and fairness in consumer reporting.

First, Defendant does not obtain certifications from its users that the users will use the reports for a permissible purpose as set forth in the FCRA. 15 U.S.C. § 1681e(a). This provision ensures that only authorized individuals with a permissible purpose have access to the reports. Second, Defendant does not obtain the required certifications that its users will comply with the FCRA's disclosure, authorization, and adverse action procedures, and that the users will comply with equal opportunity laws. 15 U.S.C. § 1681b(b)(1). Third, Defendant does not provide its users with a summary of the consumer's rights and notice of FCRA responsibilities. 15 U.S.C. §§ 1681b(b)(1)(B), 1681e(d)(1). Defendant likewise fails to provide consumers with copies of their complete consumer files when requested. 15 U.S.C. § 1681g(a). These core FCRA protections are designed to ensure that consumers have knowledge that consumer reports about them are being used to evaluate them for jobs, that consumers have consented to such use, that consumers are informed if such reports operate to their detriment, and that consumers have an opportunity to obtain copies of their reports and to correct errors if necessary. On behalf of themselves, and two putative classes,

Plaintiffs seeks statutory and punitive damages, attorneys' fees and costs for Defendant's willful violations of the FCRA. 15 U.S.C. § 1681n.

Plaintiffs will prevail on willfulness. Willfulness under the FCRA includes both knowing and reckless violations of the law. The scope of "employment purposes" under the FCRA is broad and covers a wide variety of situations beyond traditional common law employee-employer relationships. *See Hoke v. Retail Credit Corp.*, 521 F.2d 1079 (4th Cir. 1975) (finding report obtained by medical licensing board to be consumer report "for employment purposes"); *Advanced Conservation Sys. v. Long Island Lighting Co.*, No. 96-9127, *reported in table case format at* 113 F.3d 1229 (2d Cir. May 23, 1997) (finding report pulled by service directory on lighting company when determining whether to list lighting company in directory to be a consumer report for employment purposes). Defendant marketed itself to employers. "Employment purposes" under the FCRA is broad enough includes both reports used to evaluate which people to *hire* as well as reports used to evaluate which people to *recruit*. *See Hoke*, 521 F.2d at 1082. As evidenced by the fact that Defendant told its employer-customers not to use reports for employment purposes, Defendant knew or at the very least, was aware of a substantial risk that its Candidate Profiles were being used for employment purposes.

The Supreme Court's decision in *Safeco* is of no help to Defendant. As a preliminary matter, any interpretation of the statute which would allow Defendant's conduct would be unreasonable in the first instance. Defendant compiled reports on consumers and sold them to employers to assist in the hiring process. That business model falls squarely within the realm of consumer reporting, and Defendant's attempts to distinguish itself from other consumer reporting agencies fall flat based on the plain text of the statute. Moreover, even if the Court were to find that Defendant could offer a reasonable post-litigation interpretation of the statute that would have allowed its conduct, Defendant's actual statutory interpretation still matters. *Safeco* does not mean that any defendant who can find a lawyer to come up with a post-litigation interpretation of the law which is "reasonable" in light of the statute can escape liability, regardless of what the defendant's actual interpretation of the law was. Post- *Safeco* courts routinely acknowledge that knowing violations of the law are always actionable, and that even whether a given violation was done in "reckless

disregard" of the law is a determination which is highly fact dependent.  This determination can only be made after an in-depth inquiry into Defendant's mindset and into Defendant's actual interpretation of the law.  *See Heaton v. Soc. Fin., Inc.*, No. 14-CV-05191-TEH, 2015 WL 6744525, at *7 (N.D. Cal. Nov. 4, 2015) ("Having considered both Plaintiffs' and Defendants' arguments regarding the interpretation of the willfulness analysis in *Safeco*, the Court finds that *Safeco* cannot stand for the proposition that Defendants can prevail on summary judgment without providing sufficient evidence of their interpretation of the statute for the Court to determine if such an interpretation was objectively unreasonable."); *Claffey v. River Oaks Hyundai, Inc.*, 494 F. Supp. 2d 976, 978-79 (N.D. Ill. 2007) ("[T]he 'objective' standard for recklessness that the Court adopted does not render irrelevant evidence of the party's actual understanding of the law.").  Moreover, willfulness under the FCRA is not akin to qualified immunity.  *See Holman v. Experian Info. Solutions, Inc.*, No. C 11-0180 CW, 2013 WL 4873496, at *6 (N.D. Cal. Sept. 12, 2013) ("Defendant overstates the *Safeco* Court's reliance on qualified immunity analysis. Indeed, the Safeco Court only mentions qualified immunity once, in a parenthetical to a citation introduced by 'Cf.'"); *Heaton*, 2015 WL 6744525, at *7 ("Defendants contend that if a statute is unclear and there is no precedential guidance as to what a valid interpretation may be, a violation may not be considered willful. However, this reading overstates *Safeco*'s holding.").

Plaintiffs also seek redress for Defendant's violations of the ICRAA on an individual basis, including redress for violations alleging that Defendant failed to maintain procedures to limit the furnishing of reports for permissible purposes, failed to obtain certifications from its users, failed to provide notices to consumers of their rights and Defendant's privacy practices, and failed to provide consumers copies of their reports.  Cal. Civ. Code §§ 1786.11, 1786.12(e), 1786.20(a), 1786.20(d)(1)(A), 1786.29.  Like the FCRA, these requirements of the ICRAA are designed to ensure that consumers are aware that reports are being procured, used for permissible purposes, and are accurate.  Plaintiffs seek statutory damages, attorneys' fees and costs for Defendant's violations of the ICRAA.  Cal. Civ. Code § 1786.50(a).

**B.     Defendant's Synopsis**

Plaintiffs' lawsuit hinges on the core misunderstanding that TalentBin is a consumer reporting agency. It is not. Based on this incorrect assumption, however, Plaintiffs allege a variety of FCRA violations and duplicative ICRAA violations. As TalentBin is not a consumer reporting agency, and the candidate profiles about plaintiffs are not "consumer reports," none of the requirements of the FCRA or ICRAA apply. While the definitions of "consumer report" and "consumer reporting agency" are circular and less than pellucid, in order to be considered a "consumer reporting agency," an entity, by definition, must sell "consumer reports." 15 U.S.C. § 1681a(f). In order to qualify as a "consumer report," information must be collected for the "purpose of serving as a factor in establishing the consumer's eligibility" for employment. *Id.* § 1681a(d).

The facts will show that this is not TalentBin's purpose. TalentBin's purpose is to help identify passive candidates, who by definition are not actively seeking employment opportunities or eligibility determinations—to "find unfindable talent." (Compl. Ex. 1.) TalentBin does this by searching for and presenting in one place information that individuals have published about themselves. (This means that if information is inaccurate or incomplete, it is because the consumer has self-published inaccurate or incomplete information.) If this consumer-published information suggests that the individual might be interesting to a company or recruiter—for example because the individual has published or tweeted about a particular computer programming language or developments in a pertinent technology area—the company or recruiter may reach out to them to prompt them to consider whether they would be interested in learning more about a position. In summary, TalentBin profiles may be used to find individuals to recruit to apply for jobs.

This is not a purpose that characterizes TalentBin profiles as "consumer reports." The "eligibility" decision element the consumer report definition requires, in the employment context, is that a communication has the capacity to serve as a factor in a hiring, retention, or promotion decision. If the subject of a TalentBin profile eventually decides to apply for employment, the profile has no bearing on the employment eligibility determination, regardless of whether the profile did or did not spark recruiter outreach: TalentBin's Terms of Use explicitly prohibit its users from using TalentBin to determine employment eligibility. Users must refer to other information, such as

application information supplied by the consumer, candidate interviews, references and verifications from prior employers and educational institutions, and perhaps background checks supplied by other vendors, in making the decision as whether the consumer is eligible to be hired.  Because TalentBin does not compile profiles for companies to serve as a factor in determining consumer eligibility for employment, its profiles are not "consumer reports," and it is not a "consumer reporting agency."

In any event, the statutes do not create strict liability for violations of their technical, "less than pellucid" requirements, *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007).  The FCRA creates a private right of action only for "negligent" and "willful" violations, 15 U.S.C. §§ 1681n, o.  Here, plaintiffs claim only willful violations, likely because those are the only violations for which statutory damages are available.  *See id.*; Compl. ¶¶ 139, 142, 135, 148, 151, 167.  There is a high bar for a private plaintive to establish a willful violation.  Willfulness claims do not lie unless it has been "clearly established" as a matter of law that the defendant's interpretation of the statute is wrong.  *Safeco*, 551 U.S. at 70.  This is an objective question for the court as to the clarity of the law at the time of the defendant's conduct.  *Id.* at 69-70.  Here, it is not "clearly established" that TalentBin is a "consumer reporting agency," nor that candidate profiles are "consumer reports."  Even if the company were wrong in its view that it is not a "consumer reporting agency," its view has a foundation in a reasonable reading of the FCRA, as discussed above.  Under the circumstances, the company's actions cannot as a matter of law amount to a willful violation.  *See id.*

The ICRAA claims against TalentBin also fail for separate and independent reasons, including that plaintiffs are not "consumers" as defined by the statute and the ICRAA and FCRA claims are impermissibly duplicative.  These claims are the subject of a forthcoming motion for judgment on the pleadings to be filed by TalentBin.

Finally, Plaintiffs have not alleged any cognizable injury.  While Plaintiffs allege that there are some errors in their candidate profiles (apparently reflecting errors in their self-published social media presence), Plaintiffs do not allege that their profiles were provided to any prospective employer or that their profiles were used to make an employment eligibility decision.  Nor are there any allegations that these purported errors caused Plaintiffs to be denied employment.  In fact, none

of the Plaintiffs are even alleged to have applied anywhere in the two years preceding the filing of the complaint. Plaintiffs have not alleged any injury as a result of TalentBin's practices.

### III.   LEGAL ISSUES

#### A.   Plaintiffs' Legal Issues

1. Whether Defendant violated the FCRA's certification, disclosure, and notice requirements as set forth in Counts I-V of the Complaint. 15 U.S.C. §§ 1681e(a), 1681b(b)(1)(A), 1681b(b)(1)(B), 1681e(d)(1), 1681g.

2. Whether Defendant violated the ICRAA's certification, disclosure, and notice requirements as set forth in Counts VI-X of the Complaint. Cal. Civ. Code §§ 1786.11, 1786.12(e), 1786.20(a), 1786.20(d)(1)(A), 1786.29.

3. Whether the FCRA violations were willful under 15 U.S.C. § 1681n.

4. Whether the ICRAA violations were willful under Cal. Civ. Code § 1786.50(a).

5. The proper measure of damages.

#### B.   Defendant's Legal Issues

1. Whether TalentBin is a "consumer reporting agency." 15 U.S.C. § 1681a(f) or an "investigative reporting agency." Cal. Civ. Code § 1786.2(c).

2. Whether TalentBin's candidate profiles are "consumer reports" or "investigative consumer reports." 15 U.S.C. § 1681a(d); Cal. Civ. Code § 1786.2(d).

3. Whether the ICRAA's election of remedies provision precludes the ICRAA claims being assert in this action. Cal. Civ. Code § 1786.52(a)

4. Whether Plaintiffs are "consumers" under the ICRAA, Cal. Civ. Code § 1786.2(c).

5. Whether TalentBin's interpretations that under the FCRA TalentBin is not a "consumer reporting agency" and/or that candidate profiles are not "consumer reports" are objectively reasonable.

6. Whether individual issues would predominate at trial of the action as a class action.

### IV. MOTIONS

#### A. Plaintiffs' Motions

Plaintiffs will file a motion for class certification and may file a motion for summary judgment.

#### B. Defendant's Motions

Defendants will file a motion for judgment on the pleadings and may file a motion for summary judgment.

### V. AMENDMENT OF PLEADINGS

#### A. Plaintiffs' Position

Plaintiffs do not anticipate amending the Complaint at this point in time, but if Plaintiffs discover facts that warrant an amended pleading, Plaintiffs will timely seek leave to amend.

#### B. Defendant's Position

Defendant does not anticipate amending its Answer at this time.

### VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

### VII. DISCLOSURES

Plaintiffs and Defendant served their initial disclosures on February 5, 2016.

### VIII. DISCOVERY PLAN (Federal Rule of Civil Procedure 26(f)).

The parties intend to submit a Stipulation of a Protective Order to govern the exchange of confidential information that will be based on this District's model stipulation for a protective order.

Currently, the parties do not believe that any changes should be made in limitations on discovery under the federal or local rules, nor should any other limitations be imposed. Plaintiffs believe that given the information disparity regarding Defendant's systems and databases, however, it may become necessary for Plaintiffs to propound more than 25 interrogatories. The parties will meet and confer regarding the most efficient way to obtain discovery on Defendant's databases and

systems.  The parties agree that no other orders should be entered by the Court at this time under Fed. R. Civ. P. 26(c), 16(b) or (c).

## IX. CLASS ACTIONS

### A. Plaintiffs' Position

This case is suitable for class treatment under Fed. R. Civ. 23(b)(3) because Plaintiffs challenge Defendant's standardized procedures, and practices.

### B. Defendant's Position

Because claims for will violation of the FCRA cannot be stated on these facts and the current state of the law, the case is inherently unsuitable for class certification.

## X. RELATED CASES

The parties are not aware of any related cases.

## XI. RELIEF

At this time, Plaintiffs seek statutory damages, punitive damages, and attorneys' fees and costs on behalf of the classes and individually.

## XII. SETTLEMENT AND ADR

The parties have agreed to private mediation and are currently picking a mediator.  The parties propose a mediation deadline of September 30, 2016.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties have consented to a Magistrate Judge for all purposes.

## XIV. OTHER REFERENCES

The parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties currently do not anticipate any narrowing.  As discovery proceeds, regular motion practice may occur to attempt to narrow issues.

## XVI. EXPEDITED TRIAL SCHEDULE

The parties do not agree to an expedited trial schedule as set forth in General Order No. 64.

## XVII. SCHEDULING

Any motions which seek to amend the pleading or to add parties must be filed and served on or before July 1, 2016.

The parties shall disclose experts and expert reports or statements pertaining to Rule 23 issues on or before November 1, 2016.

Rebuttal experts and expert reports or statements pertaining to Rule 23 issues shall be disclosed on or before December 1, 2016.

Any motions pertaining to class certification under Rule 23 shall be filed on or before January 16, 2017.

Oppositions to any motions pertaining to class certification under Rule 23 shall be filed within 45 days after the motion.

Replies to any motions pertaining to class certification under Rule 23 shall be filed within 30 days after the opposition.

Non-dispositive motions and supporting documents, including those which relate to discovery, shall be filed and served on or before 30 days following the Court's decision on class certification.

Fact Discovery shall close 90 days following the Court's decision on class certification.

The parties shall disclose experts and expert reports or statements pertaining to any other remaining issues within 30 days following the close of Fact Discovery.

Rebuttal experts and expert reports or statements pertaining to any other remaining issues shall be disclosed within 60 days following the close of Fact Discovery.

Expert discovery on any remaining issues shall close 90 days following the close of Fact Discovery.

Dispositive motions and supporting documents shall be filed and served on or before 120 days after the Court's decision on class certification.

Oppositions to dispositive motions shall be filed within 30 days after the dispositive motion is filed.

Reply briefs in further support of dispositive motions shall be filed within 14 days after the opposition is filed.

A trial date shall be set for 90 days following the Court's ruling on dispositive motions, with a final pretrial conference set according to the Court's calendar and preference.

## XVIII. TRIAL

The parties estimate a trial length of one week. The parties may amend this estimate as discovery continues and as necessary based on the Court's resolution of any motions related to class certification.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The parties have filed their Certificates of Interested Entities.

## XX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: February 5, 2016

BERGER & MONTAGUE, P.C.

By: /s/John G. Albanese
John G. Albanese (*pro hac vice*)
Attorneys for Individual and Representative Plaintiffs

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb, NY Bar No. JG-7905**
nyjg@aol.com
Dana L. Gottlieb, NY Bar No. DG-6151**
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, NY 10003
Phone: (212) 228-9795
Fax: (212) 982-6284
**pro hac vice* forthcoming

DATED: February 5, 2016

JAMES F. MCCABE
ANGELA E. KLEINE
SARAH N. DAVIS
MORRISON & FOERSTER LLP

By:/s/Angela E. Kleine
ANGELA E. KLEINE

Attorneys for Defendant
TALENTBIN, INC.

SIGNATURE ATTESTATION

In accordance with Civil Local Rules 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatories on the e-filed document.

Dated: February 5, 2016 /s/John G. Albanese
John G. Albanese (*pro hac vice*)

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Date: _____

Hon. Joseph C. Spero
Chief United States Magistrate Judge