1
2
3
4

NICHOLS KASTER, LLP
Matthew C. Helland, SBN 250451
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Tel.: 415.277.7235; Fax: 415.277.7238

5
6
7
8
9

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
John G. Albanese, MN Bar No. 0395882*
jalbanese@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999; Fax: 612.584.4470

10
11
12
13
14

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb, NY Bar No. JG-7905*
nyjg@aol.com
Dana L. Gottlieb, NY Bar No. DG-6151*
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, NY 10003
Tel.: 212.228.9795; Fax: 212.982.6284

15
16

*admitted *pro hac vice*
Attorneys for Individual and Representative Plaintiffs

17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24
25
26
27
28

ERIC HALVORSON, LAURA FERRER, PETER DALLMAN, ROBERT GRANA, DENNIS BULCAO, and NEIL YOUNG, individually, as representatives of the classes, and on behalf of the general public,

Plaintiffs,

v.

TALENTBIN, INC.,

Defendant.

Case No.    3:15-cv-05166-JCS

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT**
**[UNOPPOSED]**

Date: Requested to be determined
        without oral argument
Hon. Joseph C. Spero

1

## NOTICE OF MOTION AND MOTION

2   Plaintiffs Eric Halvorson, Laura Ferrer, Peter Dallman, Robert Grana, Dennis

3   Bulcao, and Neil Young ("Plaintiffs") request that this Motion be determined without oral

4   argument and, as such, no hearing date or time has been scheduled.  Pursuant to Fed. R.

5   Civ. P. 23, and for the reasons discussed in the accompanying Memorandum below,

6   Plaintiffs respectfully move the Court for an order:

7           a.      Finding that the Federal Rules of Civil Procedure and all other

8                   requirements for certification of a settlement class have been

9                   satisfied, and certifying the Settlement Class;

10          b.      Preliminarily approving the Settlement Agreement as fair,

11                  reasonable, and adequate;

12          c.      Finding that the class notice procedure set forth below satisfies the

13                  requirements of due process and applicable law and procedure;

14          d.      Setting a date for the hearing at which the Court will finally

15                  determine the fairness, reasonableness, and adequacy of the proposed

16                  settlement (the "Final Fairness Hearing");

17          e.      Appointing Plaintiffs as class representatives for the Settlement

18                  Class; and

19          f.      Appointing Berger & Montague, P.C. and Gottlieb & Associates as

20                  Class Counsel to the Settlement Class.

21      Defendant TalentBin, Inc. ("Defendant") does not oppose this Motion.  For good

22  cause shown, Plaintiffs' Motion should be granted.

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

I.  INTRODUCTION ..........................................................................................1

II.  STATEMENT OF THE ISSUE TO BE DECIDED ..................................1

III.  RELEVANT FACTS ....................................................................................1

    A.  THE PARTIES ENGAGED IN LITIGATION, INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THIS SETTLEMENT ..............................1

        1.  Litigation History ..........................................................................1

        2.  Summary of Plaintiffs' Settled Claims Against Defendants....................3

        3.  Settlement Negotiations ..................................................................4

    B.  THE PARTIES' SETTLEMENT AGREEMENT ..........................................5

        1.  Overview of Terms and Settlement Administration ......................5

        2.  Form of Notice to Settlement Class Members ..............................6

        3.  Opt-Out Right ................................................................................7

        4.  Right to Object ...............................................................................8

        5.  Attorneys' Fees, Expenses, and Service Awards ..........................8

IV.  ARGUMENT ................................................................................................8

    A.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ..........9

        1.  The prerequisites of Rule 23(a) Are Met ....................................10

            a.  The Proposed Settlement Class Meets the Numerosity Requirement...10
            b.  The Class Shares Common Questions of Law and Fact ......................10
            c.  The Named Plaintiffs' Claims Are Typical ..........................................12
            d.  The Class Representatives' Interests are Aligned with Those of the Settlement Class, and the Class Representatives Will Vigorously Represent the Class Through Qualified Counsel ...............12

        2.  The Prerequisites of Rule 23(b) Are Met....................................13

            a.  Common Questions of Law or Fact Predominate .................................13

b. A Class Action Is the Superior Vehicle for Adjudication ..................15

B. THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE AS SET FORTH UNDER RULE 23(E) ...............................................15

1. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations ...............................................................16

2. The Settlement Has No Deficiencies ...........................................17

3. The Settlement Does Not Grant Preferential Treatment .............................17

4. The Settlement Falls Well Within the Range of Approval .........................18

C. THE COURT SHOULD APPROVE DISSEMINATION OF THE PROPOSED CLASS NOTICE...............................................................21

V. CONCLUSION ..............................................................23

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................5, 10, 13, 15

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980)...................................9

*Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307 (D. Or. 2008) ...............14, 18

*Barel v. Bank of Am.*, No. 06-cv-2372, ECF No. 60, Final Approval Order (E.D. Pa. Jan. 16, 2009) ....................................................................................................................19

*Barton v. Specialized Loan Servicing, LLC*, No. 13-cv-2366, ECF No. 52, Stipulation of Settlement (D. Minn. Nov. 17, 2014)........................................................................19

*Browning v. Yahoo, Inc.*, No. C-04-1463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007).23

*Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478 (N.D. Ga. 2006)........................................11

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) ...............11, 12, 14

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).........................................18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)..................................8, 16

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001)...................................20

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998)....................................................21

*Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1982) ....................................................................................................................9

*Gauci v. Citi Mortgage*, No. CV 11-01387 ODW JEMX, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ........................................................................................................21

*Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008) ....................................................................................................................11

*Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ....................................................................................................................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................10, 12, 16

*Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ....................................................................................................................16

*Holman v. Experian Info. Sols., Inc.*, No. C 11-0180 CW, 2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ........................................................................................................10

*Holman v. Experian Info. Solutions*, No. 11-cv-180, ECF 243-1, Settlement Agreement (N.D. Cal. Mar. 27, 2014) ........................................................................................19

*In re Charles Schwab Corp. Secs. Litig.*, No. 08-01510, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........................................................................................................15

*In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211 (W.D. Okla. 2010)..14, 18

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)..........................8

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)..........................18

*In re Philips/Magnavox Television Litig.*, No. 09-cv-3072, 2012 WL 1677244 (D.N.J.
    May 14, 2012) ............................................................................................22

*In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300 (E.D. La. 2015).......22

*In re TD Ameritrade Account Holder Litigation*, No. 2011 WL 4079226 (N.D. Cal. Sept.
    13, 2011) ....................................................................................................22

*Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564 (S.D. Iowa 2011) .............................................22

*King v. United SA Fed. Credit Union*, No. 09-cv-937, ECF No. 31, Final Approval Order
    (W.D. Tex. Oct. 8, 2010) ............................................................................19

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015).................................................22

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ........................................14

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ......................................................6

*Parthiban v. GMAC*, No. 05-cv-768, ECF No. 103-2, Settlement Agreement (C.D. Cal.
    Jan. 10, 2008) ............................................................................................19

*Patel v. Trans Union, LLC*, 308 F.R.D. 292 (N.D. Cal. 2015) ..........................................11

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...............................................9

*Phillips v. Accredited Home Lenders Holding Co.*, No. 06-cv-57, ECF No. 51, Final
    Approval Order (C.D. Cal. July 17, 2008) .................................................19

*Riker v. Gibbons*, No.3:08-cv-115, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ..............16

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..........................................18

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D.
    Cal. 1999)..............................................................................................2, 8

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402 (E.D. Pa. 2010)....................11

*Singleton v. Domino's Pizza, LLC,* 976 F. Supp. 2d 665 (D. Md. 2013)............................15

*Sleezer v. Chase Bank USA, N.A.*, No. 07-cv-961, ECF No. 53-1, Settlement Agreement
    (W.D. Tex. Jan. 12, 2009)...........................................................................19

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .........................................................20, 21

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).......................................................18

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133 (D.N.J. 2009) .........................11

*White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) .15

*White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2002 WL 1809084 (E.D. La. Aug. 6, 2002) ................................................................................................11

*Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ........................................................................................11

*Yeagley v. Wells Fargo*, No. 05-cv-3403, ECF No. 142, Final Approval Order (N.D. Cal. July 23, 2007)................................................................................................20

**Statutes**

15 U.S.C. § 1681(b)(b)(1) ................................................................................................3

15 U.S.C. § 1681b(b)(1)(A) ........................................................................................2, 3

15 U.S.C. § 1681b(b)(1)(B) ............................................................................................4

15 U.S.C. § 1681e(a)....................................................................................................2, 3

15 U.S.C. § 1681e(d)(1) ..................................................................................................4

15 U.S.C. § 1681g ............................................................................................................4

15 U.S.C. § 1681n(a)(1)......................................................................................14, 18, 20

15 U.S.C. §§ 1681o(a)(1) ..............................................................................................20

28 U.S.C. § 1331 ..............................................................................................................2

28 U.S.C. § 1332(d) ........................................................................................................2

28 U.S.C. § 1715(b) ........................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................7, 9, 22

Fed. R. Civ. P. 23(a)(1) ................................................................................................10

Fed. R. Civ. P. 23(a)(2) ................................................................................................10

Fed. R. Civ. P. 23(b)(3)........................................................................................7, 13, 15

Fed. R. Civ. P. 23(b)(3)(A)–(C) ..................................................................................13

Fed. R. Civ. P. 23(b)(3)(D) ..........................................................................................10

Fed. R. Civ. P. 23(c)(2) ................................................................................................23

Fed. R. Civ. P. 23(c)(2)(B)......................................................................................7, 22

Fed. R. Civ. P. 23(e)......................................................................................................15

Fed. R. Civ. P. 23(e)(2) ..................................................................................................1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Civ. Code § 1786 *et seq.* ................................................................................. 2

5 Moore's Federal Practice § 23.83[a], at 23-336.2 to 23-339 ........................... 16

Manual for Complex Litigation § 30.41, at 236 (3d ed. 1995) ........................... 15

Newberg on Class Actions § 13:13 (5th ed.) ...................................................... 16

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

## I.      INTRODUCTION

Plaintiffs Eric Halvorson, Laura Ferrer, Peter Dallman, Robert Grana, Dennis Bulcao, and Neil Young ("Plaintiffs"), individually and on behalf of the Settlement Class[1] seek preliminary approval of the proposed Settlement Agreement with Defendant TalentBin, Inc. ("Defendant" or "TalentBin") which resolves this Fair Credit Reporting Act ("FCRA") class action.  The Settlement Agreement between Plaintiffs and Defendant (collectively, the "parties"), if approved, will resolve all claims of the Plaintiffs and all members of the Settlement Class in exchange for Defendant's agreement to pay $1,150,000 into a common settlement fund and to make certain business practice changes for the benefit of Settlement Class members.  Settlement Class members who submit a claim providing their mailing address and certifying that they believe their statutory rights were violated and that they were harmed by TalentBin shall receive a pro rata share of the common settlement fund after deductions for attorneys' fees, costs, and Plaintiffs' service awards.

The proposed settlement of this action is the product of extensive arms-length negotiations by experienced and informed counsel as facilitated by experienced mediator Hon. Edward A. Infante (Ret.).  Its terms are "fair, reasonable, and adequate" and it warrants preliminary approval.  Fed. R. Civ. P. 23(e)(2).

## II.     STATEMENT OF THE ISSUE TO BE DECIDED

Whether the Settlement Agreement should receive preliminary approval.

## III.    RELEVANT FACTS

### A.      THE PARTIES ENGAGED IN LITIGATION, INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THIS SETTLEMENT

#### 1.      Litigation History

Defendant operates a website and online tool that gathers information from various sources regarding potential job candidates and compiles that information into "candidate profiles." The information is gathered from social media sources such as Meetup and Github

---

[1] Unless otherwise explicitly defined herein, all terms have the same meanings as those set forth in the Settlement Agreement, attached to the Declaration of E. Michelle Drake ("Drake Decl.") as Exhibit A.

and can include photographs of the consumer and information relating to job history, professional and technical skills, professional interests, personal interests and summaries of the potential job candidates' behavior on various social media sites. Defendant sells access to these candidate profiles through monthly subscriptions to employer and recruiter customers.

Plaintiffs are the subjects of candidate profiles. Plaintiffs allege that they requested copies of their candidate profiles and other information in Defendant's files about Plaintiffs but were not provided with all requested materials.

This action was brought pursuant to the FCRA. Plaintiffs filed their initial complaint in the Superior Court of the State of California for the County of San Francisco on October 2, 2015. *See* Dkt. 1-1. The initial complaint asserted ten counts, five under the FCRA and five parallel claims under the California Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786 *et seq.*

On November 10, 2015, Defendant removed on the basis that Plaintiffs' claims under the FCRA (1) give rise to federal question jurisdiction under 28 U.S.C. § 1331, and (2) give rise to federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See* Dkt. 1.  Following its motion for judgment on the pleadings, Dkt. 27, which asserted that FCRA and ICRAA claims cannot proceed together on behalf of the same consumers, Plaintiffs filed their First Amended Complaint (the operative complaint).

Plaintiffs' First Amended Complaint asserts five claims under the FCRA:

(1) Failure to obtain certification of a permissible purpose in violation of 15 U.S.C. § 1681e(a);

(2) failure to obtain certification regarding users' disclosure, authorization, adverse action procedures, and compliance with federal and state equal opportunity laws and regulations from its users prior to providing those users with candidate profiles in violation of 15 U.S.C. § 1681b(b)(1)(A);

(3) failure to provide users of the candidate profiles with a summary of the consumers' rights under the FCRA prior to or contemporaneous to the provision of the candidate profiles in violation of 15 U.S.C. § 1681(b)(b)(1);

(4) failure to provide notice to users of the users' responsibilities under the FCRA; and

(5) failure to provide consumers with a copy of their full files, including an identification of the third parties to whom the information was provided and an identification of the sources of the information contained in the consumers' reports.

Dkt. 31-1

Prior to mediation in this matter, the parties exchanged written discovery including interrogatories and productions of documents by each side. At mediation, Plaintiffs were provided with additional data and information about the Class, which enabled Plaintiffs to analyze potential damages for the Class. As part of the terms of the agreement in principle reached at the mediation, Plaintiffs were provided with a sample of 3,594 candidate profiles, which Plaintiffs analyzed to ascertain the prevalence of various terms and phrases that could adversely affect candidates who are seeking employment.

On August 9, 2016, the parties attended mediation with neutral Hon. Edward Infante, at which the parties agreed to a settlement term sheet. The parties then formalized a class-wide settlement, and Plaintiffs bring that settlement before the Court with this Motion.

**2.      Summary of Plaintiffs' Settled Claims Against Defendants**

Plaintiffs alleged that Defendant violated the Fair Credit Reporting Act ("FCRA") in five ways.  First, Plaintiffs allege that Defendant does not require users to certify a permissible use for candidate profiles by the users of Defendant's service in violation of 15 U.S.C. § 1681e(a).  Second, in violation of 15 U.S.C. § 1681b(b)(1)(A), Plaintiffs allege that Defendant does not require users who intend to use candidate profiles for "employment purposes" as defined by the FCRA to certify (a) that the users provide consumers with

1   statutorily mandated disclosures, (b) that the users will comply with the FCRA if any

2   adverse actions are taken on the basis of the candidate profiles, or (c) that the users will not

3   use the information in candidate profiles in violation of any state or federal equal

4   employment opportunity law. Third, Plaintiffs allege that Defendant does not provide users

5   with summaries of consumers' rights under the FCRA either prior to or contemporaneous

6   with the provision of candidate profiles to users in violation of 15 U.S.C. § 1681b(b)(1)(B).

7   Fourth, Plaintiffs allege that Defendant does not provide users with notice of their

8   obligations under the FCRA in violation of 15 U.S.C. § 1681e(d)(1). Fifth, Plaintiffs allege

9   that Defendant's policy and practice is not to provide consumers with a copy of their full

10  file, including an identification of the third parties to whom the consumer's candidate

11  profiles was provided or the identification of the sources of the information contained in the

12  profiles upon request in violation of 15 U.S.C. § 1681g.

13      Defendant denies the allegations and all liability with respect to all facts and claims

14  alleged by Plaintiffs, and specifically avers that the candidate profiles are not "consumer

15  reports" under the FCRA and that Defendant is not a "consumer reporting agency" under

16  the FCRA. Thus, Defendant believes that the requirements and obligations of the FCRA do

17  not apply to it or its business.

18      The proposed Settlement Class consists of the approximately 72,275 individuals on

19  whom Defendant maintained candidate profiles and who either (1) requested from

20  Defendant a copy of the profile about them or (b) were the subject of a profile, containing

21  at least one email address not known to be bad, that was exported to a Recruiter between

22  October 2, 2013 and August 8, 2016. (Drake Decl., Ex. A ¶ 3.1). In return for the settlement

23  benefits, the Settlement Class members will release all claims that were raised, or could

24  have been raised, based on the facts alleged in the action. (*Id.* ¶ 5.1).

25              **3.     Settlement Negotiations**

26      On August 9, 2016, the parties engaged in an all-day mediation with the Honorable

27  Edward Infante. After a full day of vigorous, arms-length negotiations, the parties reached

28  an agreement as to the material terms of a settlement. (Drake Decl. ¶ 7). While the parties

4

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
Case No. 3:15-cv-05166-JCS

1   negotiated for a common fund amount, the parties did not negotiate any terms relating to

2   attorneys' fees for Plaintiffs' Counsel or service awards for the Named Plaintiffs until after

3   all other material terms were agreed upon. (*Id.* ¶ 8).  The material terms of the settlement

4   were reduced to a term sheet signed at the conclusion of mediation. (*Id.* ¶ 7).  In negotiations

5   over subsequent weeks, a full Settlement Agreement was reached and executed. (*Id.* ¶ 9).

6           **B.    THE PARTIES' SETTLEMENT AGREEMENT**

7                   **1.    Overview of Terms and Settlement Administration**

8           First, in connection with the settlement of the litigation, Defendant has agreed to

9   several significant business practice changes that will mitigate the concerns expressed by

10  Plaintiffs.  (Drake Decl., Ex. A ¶ 8).  Defendant has agreed to revise its Terms of Use to (a)

11  clarify to its potential users that the TalentBin service is to only be used to identify

12  Candidates for possible recruitment and to make initial contact with such Candidates; (b)

13  clarify that TalentBin users are not permitted to use TalentBin profiles as a factor in

14  determining any consumer's eligibility for employment, retention, or promotion, and (c)

15  prohibit TalentBin users from reviewing the profiles of persons who are employed by the

16  user or have already expressed interest in employment with the user outside of the TalentBin

17  search process.   Defendant is also enhancing various protections for the subjects of

18  candidate profiles including (a) permitting consumers to request correction of bad matches

19  (where Defendant incorrectly identifies the social media profile(s) of two different people

20  as belonging to one person), (b) enable consumers to request that their candidate profile be

21  re-crawled by Defendant's algorithm to update information on the candidate's revised social

22  media profiles, (c) improving the ability of consumers' requests to have their profiles

23  removed (and stay removed), and (d) adding terms to a "Black List" of terms that Defendant

24  automatically omits from profiles because they may not add value to the candidate for users.

25          Second, Defendants will create a common fund for class members consisting of one

26  million, one hundred and fifty thousand dollars ($1,150,000) for the benefit of the

27  Settlement Class.  (Drake Decl., Ex. A ¶¶ 1.27 & 6.3.)  This fund will be distributed *pro*

28  *rata* to all Settlement Class members who submit valid claims which provide their mailing

1   address, after the deductions for any Court-awarded attorneys' fees and costs, settlement

2   administration costs, and Named Plaintiff service awards.  (*Id.* ¶ 7.)

3         If settlement checks are not cashed, a donation will be made to National Consumer

4   Law Center ("NCLC").  (*Id.* ¶ 7.4.)  NCLC provides educational materials to consumers

5   regarding the FCRA and credit reporting (Drake Decl. ¶ 10), and is an appropriate *cy pres*

6   recipient.  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("*[C]y pres*

7   distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the

8   interests of the silent class members.").  No portion of the settlement fund will revert to

9   Defendant in any circumstance.

10        After soliciting bids from four different settlement administrators, the parties have

11  jointly selected Angeion Group, an independent third party, to serve as the settlement

12  administrator in this case.  The costs of settlement administration will depend upon the

13  claims rate, but based upon the parties' best estimates, will not exceed $53,450.  The

14  settlement administrator will update the email addresses in TalentBin's records for the

15  Class, email Notice to class members, send a reminder email Notice prior to the claims

16  deadline, mail settlement payments, and undertake other administrative tasks.  All fees and

17  expenses charged by the administrator will be deducted from the settlement fund.  (Drake

18  Decl., Ex. A ¶¶ 1.20 & 1.27).

19              **2.       Form of Notice to Settlement Class Members**

20        The parties have agreed to a notice procedure which provides for Notice to be sent

21  via email, through individually targeted internet advertisements, and posted on a settlement

22  website.  (*Id.* ¶ 3.3.)

23        Notice will be sent via email to the email addresses in TalentBin's records for each

24  Class member (other than known bad email addresses).  (*Id.* ¶ 3.3.1).  The email notice shall

25  be in substantially the form of Exhibit M to the Drake Declaration and shall include a link

26  to the long form notice attached to the Settlement Agreement as Exhibit 2.  (*Id.* at Ex. M &

27  Ex. A).  Prior to sending the Notice, the settlement administrator will update the addresses

28  using a vendor that tracks email address updates through various datasets collected and

made available by public and private entities.  (*Id.*).  Fifteen days before the deadline for submitting claims, the administrator will also send a reminder Notice via email to the updated address list.  (*Id.* ¶ 3.3.2).  The proposed form of the Notice is attached to the Settlement Agreement as Exhibit 2.

In addition to the email Notices, the administrator will also establish a settlement website, where the operative complaint, and settlement-related documents will be posted.  (*Id.* ¶ 3.4).  The website will also allow class members to submit claims through an online portal.  (*Id.*).  The administrator will also establish a toll-free telephone number for class members to utilize to obtain information.  (*Id.*).

Furthermore, the settlement administrator will use Class members' email addresses (including the updated addresses) to target Class members with advertising on Facebook.  These targeted advertisements will link to the settlement website where the Class members can submit their claims.

These extensive efforts to provide Notice to the Settlement Class are "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Defendant does not have postal mailing or e-mail addresses for all of the Class—which is the reason that claims are necessary for each Class member to receive a distribution from the common fund—making email Notice and the targeted advertisements through one of the principal social media platforms from which Defendant collected Class members' data the best notice practicable.  Defendants will also comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed settlement to appropriate officials.  (Drake Decl., Ex. A ¶ 3.7.)

### 3.    Opt-Out Right

The parties propose that the Settlement Class be certified pursuant to Fed. R. Civ. P. 23(b)(3).  Settlement Class members may send opt-out requests to the address contained in the Notice, and the settlement administrator will maintain that address.  (Drake Decl., Ex. A ¶ 3.6).  Additionally, Class members who wish to opt out may submit their opt out request through the settlement website using an electronic signature.  The deadline for class

members to postmark any opt-out of the settlement will be 60 days after the date Notices are mailed.  (*Id.* ¶ 1.14).

### 4.  Right to Object

Class members who wish to object to the Settlement Agreement must file a written statement of objection with the Clerk of Court, and mail their objection to Plaintiffs' Counsel and Defense Counsel no later than the objections deadline, a date to be set by the Court in a preliminary approval order.  (*Id.* ¶ 3.8.1).  Settlement Class members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.  (*Id.*).

### 5.  Attorneys' Fees, Expenses, and Service Awards

The Settlement Agreement provides that Plaintiffs' Counsel's fees and service awards for the Named Plaintiffs are to be deducted from the fund, subject to Court approval. (*Id.* ¶¶ 6.1, 6.2).  Counsel will petition the Court for up to 25 percent of the fund as attorneys' fees, as well as documented, customary expenses, and service awards of $2,500 for each Plaintiff.  (*Id.* ¶ 6.1).  Plaintiffs' Counsel will formally make this request prior to final approval, but no later than fourteen days prior to the deadline for objections, so that the papers are available to class members prior to the deadline for opt-outs and objections.  (*Id.* ¶ 6.2); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010).  Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees or class representative service awards being approved. (Drake Decl., Ex. A ¶ 6.5.)

## IV.   ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, particularly in the class action context.  *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999) ("There is a strong judicial policy in favor of settlements in complex class actions"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting "strong judicial policy that favors settlements,

1   particularly where complex class action litigation is concerned"); *Armstrong v. Board of*

2   *Sch. Directors*, 616 F.2d 305, 312-13 (7th Cir. 1980); *Franks v. Kroger Co.*, 649 F.2d 1216,

3   1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1982); *Petrovic v. Amoco Oil Co.*, 200

4   F.3d 1140, 1148 (8th Cir. 1999).

5       These considerations apply here.  For the reasons set forth below, the Court should

6   grant preliminary approval of the settlement, and authorize the issuance of Notice to the

7   Settlement Class.

8       **A.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.**

9       The parties request that the Court certify the following Settlement Class under Fed.

10  R. Civ. P. 23 for settlement purposes only:

11      All persons who were the subject of a TalentBin profile and who, between
        October 2, 2013, and August 8, 2016, inclusive, (a) requested from
12      TalentBin a copy of the profile about them or (b) were the subject of a
        profile, containing at least one email address not known to be bad, that was
13      exported to a Recruiter.

14      The class definition differs slightly from those pled in the operative complaint.  The

15  changes are based on information revealed in discovery and during information exchanges

16  attendant to the mediation.  The class definitions in the operative complaint included "all

17  individuals about whom Defendant created a 'candidate profile' and communicated that

18  'candidate profile' to a third party on or after October 2, 2013 and continuing through the

19  date the class list is prepared" and those members of that class "who requested information

20  from their consumer files from Defendant and to whom Defendant did not provide

21  information from the individual's file on or after October 2, 2013…" Dkt 31-1, ¶ 116.  One

22  of Defendant's principal defenses to both of the classes' allegations in the operative

23  complaint was that the FCRA did not apply to its activities.  Because both classes in the

24  operative complaint sought the same damages under the FCRA and would have encountered

25  the same legal issues, the Settlement Class definition combines the two classes pleaded in

26  the operative complaint in recognition of the common questions, damages and claims of

27  each pleaded class.

28

Even a class certified for settlement purposes only must satisfy the requirements for class certification pursuant to Rule 23, though the court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The proposed Settlement Class here meets the prerequisites for certification under Rule 23(a) and 23(b)(3).

### 1.      The Prerequisites of Rule 23(a) Are Met.

Under Fed. R. Civ. P. 23(a), a class may be certified only when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  The proposed Settlement Class meets these requirements.

a.      The Proposed Settlement Class Meets the Numerosity Requirement.

Fed. R. Civ. P. 23(a)(1) requires a proposed class be "so numerous that joinder of all members is impracticable."   In this case, where the Settlement Class consists of approximately 72,275 people, there is no question that joinder would be impracticable, and that the numerosity requirement is met.

b.      The Class Shares Common Questions of Law and Fact.

A proposed class satisfies the "commonality" requirement "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement, however, has been

> construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

FCRA classes are frequently certified in cases where a defendant's uniform policies and procedures impacted class members in the same way.  *See, e.g., Holman v. Experian*

10

*Info. Sols., Inc.*, No. C 11-0180 CW, 2012 WL 1496203, at *10 (N.D. Cal. Apr. 27, 2012) (finding commonality and certifying class involving the sale of consumer reports for impermissible purposes); *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2002 WL 1809084, at *11 (E.D. La. Aug. 6, 2002) (finding commonality and certifying class involving claim under the FCRA that defendant had impermissibly obtained consumer reports); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304 (N.D. Cal. 2015) (finding commonality and certifying FCRA class in case alleging failure to disclose all information in a consumer's file); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 411-12 (E.D. Pa. 2010) (finding commonality and certifying FCRA class when defendant consumer reporting agency's consumer reports all contained the same illegal statement regarding outdated information); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 485 (N.D. Ga. 2006) (finding commonality and certifying FCRA class when defendant consumer reporting agency consistently and as a matter of policy failed to provide full file disclosures to consumers who requested them); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) (finding commonality and certifying FCRA class when consumer reporting agency sent allegedly misleading form letter to consumers who disputed information on their reports); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) (same); *Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2008 WL 4614327, at *4 (N.D. Ill. Oct. 15, 2008) (finding commonality and certifying FCRA class when consumer reporting agency's standard procedure allegedly caused inaccurate reporting); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *4 (E.D. Va. Aug. 23, 2007) (finding commonality and certifying FCRA class when claim revolved around consumer reporting agency's procedures for notifying class members that adverse public record information about them was being reported).

Here, there are common issues of law and fact with respect to the Settlement Class which would be determinative of the claims at issue that are based on Defendants' common procedures. The common determinative questions here are (1) whether the candidate profiles are "consumer reports" under the FCRA, and (2) whether Defendant is a "consumer

reporting agency" subject to the FCRA.  Further, Defendant's willfulness, a prerequisite to liability under the FCRA, would also be a common legal question.  *See Chakejian*, 256 F.R.D. at 500 ("[t]o prove willfulness here, a consumer-by-consumer inquiry is not necessary.").  Accordingly, the commonality requirement is satisfied.

c.      <u>The Named Plaintiffs' Claims Are Typical.</u>

A named plaintiff's claims are typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

In this case, Plaintiffs' claims are typical of the claims of other class members, and are based upon the same legal premises.  Plaintiffs were the subject of candidate profiles.  Plaintiffs sought copies of their candidate profiles and the other documents in Defendant's files about them.  Plaintiffs' claims, like those of each and every other class member, depend on the legal questions of whether Defendant is a consumer reporting agency and whether the candidate profiles are consumer reports.  When every member of the Settlement Class, including Plaintiffs, suffered violations of the FCRA that depend on the exact same legal inquiries, it is manifestly clear that Plaintiffs' claims are typical.

d.      <u>The Class Representatives' Interests Are Aligned with Those of the Settlement Class, and the Class Representatives Will Vigorously Represent the Class Through Qualified Counsel.</u>

To make a determination on adequacy, the court must evaluate both the named plaintiffs and their counsel:

> Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020.

The resolution of the first question is simple: the Named Plaintiffs and their Counsel have no conflicts of interest with the Settlement Class.  (Drake Decl. ¶ 11).  Second, both the Named Plaintiffs and their Counsel have vigorously worked in the best interest of the

12

1    Settlement Class, and will continue to do so.

2         The Named Plaintiffs have been actively engaged in this case.  (*Id. ¶* 12).  Each of

3    the Named Plaintiffs have met with Counsel in person, provided Counsel with written

4    discovery responses and documentation regarding their experiences with Defendant, stayed

5    abreast of developments in this case, and evaluated the Settlement Agreement.  (*Id.*).

6         Second, Plaintiffs' Counsel is highly experienced in complex class action litigation

7    and consumer litigation in general.  (*See* Drake Decl., Exs. B-D).  Berger & Montague, P.C.

8    ("Berger") was founded in 1970, and has been concentrated on representing plaintiffs in

9    complex class actions ever since.  (*Id.*, Ex. B).  The firm has been recognized by courts for

10   its skill and experience in handling major complex litigation.  (*Id.*).  Berger has been

11   recognized by The National Law Journal in 11 of the last 15 years for its "Hot List" of top

12   plaintiffs' oriented litigation firms in the nation.  (*Id.*).  Lead counsel from Berger, E.

13   Michelle Drake, has worked extensively on FCRA class actions.  (Drake Decl. ¶ 13).  John

14   G. Albanese, also from Berger, has concentrated his practice on FCRA litigation as well,

15   and is counsel of record in many active FCRA cases throughout the country.  (*Id. ¶* 14).

16   Gottlieb & Associates is also qualified to serve as class counsel.  (Drake Decl., Ex. D).

17        In sum, the numerosity, commonality, typicality, and adequacy requirements of

18   Rule 23(a)(1)–(4) are met here.

19              **2.      The Prerequisites of Rule 23(b) Are Met.**

20        The Settlement Class's claims also meet the predominance and superiority

21   prerequisites of Fed. R. Civ. P. 23(b)(3).  In evaluating this prong, the court may consider

22   class members' interests in prosecuting their claims individually, the extent and nature of

23   litigation thus far, and the desirability of concentrating the litigation in the particular forum.

24   Fed. R. Civ. P. 23(b)(3)(A)–(C).  In the context of a classwide settlement, the court need

25   not consider whether the case, if tried, would present difficult management problems.

26   *Amchem*, 521 U.S. at 620.  The applicable requirements are met in this case.

27                   a.      Common Questions of Law or Fact Predominate.

28        When considering predominance, the core issue is "whether the proposed classes

1  are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at
2  623.

3      In this case, classwide issues predominate over any individual concerns.  First and
4  most important is the question of whether Defendant's candidate profiles are consumer
5  reports under the FCRA, which Plaintiffs contend would make Defendant a consumer
6  reporting agency subject to the FCRA.  Because Defendant collected information for
7  candidate profiles on each class member, a determination of this question would completely
8  obviate the need for an examination of any individual issues relative to individual class
9  members.  The predominance requirement is therefore met.

10      Second, the willfulness of Defendant's violations presents a critical common
11  question.  Indeed, whether Defendant's belief that candidate profiles are not consumer
12  reports under the FCRA was reasonable is a common inquiry to all class members. The
13  ability of class members to obtain statutory damages is contingent upon a finding that
14  Defendant's belief that it was not subject to the FCRA was reasonable and therefore its
15  violations were willful.  *See* 15 U.S.C. § 1681n(a)(1).  Because Defendant's alleged actions
16  affected every member of the Settlement Class, the answer to the question of whether
17  Defendants' violations were willful can be determined on a class-wide basis.  *Chakejian*,
18  256 F.R.D. at 500 ("Thus, the inquiry is to [defendant's] state of mind in implementing its
19  policies and procedures, not on the customer's particular interaction with the CRA…. To
20  prove willfulness here, a consumer-by-consumer inquiry is not necessary.").

21      Third, if this case were litigated, the amount of damages could also be determined
22  on a classwide basis.  Because Plaintiffs sought statutory and punitive damages, no
23  individual analysis of damages would be required.  *See Murray v. GMAC Mortg. Corp.*, 434
24  F.3d 948, 952-53 (7th Cir. 2006).  In determining the amount of statutory damages to
25  impose pursuant to the FCRA, courts have looked to "the importance, and hence the value,
26  of the rights and protections" at issue in the case.  *Ashby v. Farmers Ins. Co. of Oregon*,
27  592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741
28  F. Supp. 2d 1211, 1224 (W.D. Okla. 2010).  Consideration of this factor requires no

1   individual analysis.  Thus, virtually every aspect of this case can be determined on a

2   classwide basis, and the predominance requirement is met.

3                           b.      A Class Action Is the Superior Vehicle for Adjudication.

4          To be certified, a class action must be "superior to other available methods for fairly

5   and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Again, in the

6   settlement context, the court need not address the manageability requirements of Rule

7   23(b)(3)(D).  *Amchem*, 521 U.S. at 620.  Courts in this District have found that "[i]f no

8   viable alternative to a class action is available, the class action is necessarily the superior

9   method of adjudication.  Where plaintiffs' anticipated award is relatively small, class

10  actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate

11  individually."  *Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL, 2012 WL 216522, at

12  *5 (N.D. Cal. Jan. 24, 2012) (internal citation and quotation omitted).  Such is the case here.

13         In a matter such as this, where the claims of all class members are identical and are

14  based on the same common core of facts, it is clear that adjudicating this matter as a class

15  action will achieve economies of time, effort, and expense, and promote uniformity of

16  results.  *See White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420, at *9 (N.D. Cal.

17  Aug. 18, 2006) ("[W]ithout class actions, there is unlikely to be any meaningful

18  enforcement of the FCRA by consumers whose rights have been violated."); *Singleton v.*

19  *Domino's Pizza, LLC,* 976 F. Supp. 2d 665, 677 (D. Md. 2013) (finding class action superior

20  and certification for settlement purposes justified "particularly in light of the relatively

21  modest amount of statutory damages available under the FCRA").

22     **B.      THE SETTLEMENT TERMS ARE FAIR, REASONABLE, AND ADEQUATE AS
              SET FORTH UNDER RULE 23(E).**
23

24         Under Fed. R. Civ. P. 23(e), court approval is required for any settlement agreement

25  that will bind absent class members.  *In re Charles Schwab Corp. Secs. Litig.*, No. 08-

26  01510, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011).  This involves a "two-step

27  process."  Manual for Complex Litigation § 30.41, at 236 (3d ed. 1995).  First, counsel

28

submit the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation.  *Id.*  Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement.  *Id.*

The determination of whether a proposed settlement is fair falls within the sound discretion of the district court.  *Class Plaintiffs*, 955 F.2d at 1276.  However, this discretion is exercised somewhat differently, depending on whether preliminary or final approval is being sought.  At the preliminary approval stage, the court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate.  *See* 5 Moore's Federal Practice § 23.83[a], at 23-336.2 to 23-339.  Rather, the court simply makes an initial determination concerning whether the settlement

> (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.

*Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011).  In the absence of any "obvious deficiencies," preliminary approval should be granted, and notice of the settlement should be directed to the class so that class members may have a chance to be heard.  Newberg on Class Actions § 13:13 (5th ed.).

The proposed Settlement Agreement in this case more than meets the standard for preliminary approval.

### 1.     The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

As recounted above, the settlement in this case was the result of arms-length negotiations facilitated by an experienced and well-respected mediator.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Riker v. Gibbons*, No.3:08-cv-115, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010); *see also Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was

negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").  Prior to mediation and settlement, the parties exchanged written discovery and Defendant provided data on which Class Counsel could determine potential damages.  The settlement here was negotiated during an all-day mediation with the Honorable Edward Infante, former Chief Magistrate Judge of the Northern District of California, and no terms relating to attorneys' fees or class representative service awards were negotiated until the total amount of the settlement, and the method for distribution to class members, had been agreed upon.  (Drake Decl. ¶¶ 10-11).  Following the mediation, Class Counsel also obtained 3,594 sample candidate profiles (approximately 5% of the Settlement Class) from Defendant to analyze and determine whether additional terms should be part of the injunctive relief (Drake Decl., Ex. A ¶ 8.5).

### 2. The Settlement Has No Deficiencies

This settlement achieves a remarkable recovery for the Settlement Class and contains none of the deficiencies which can stand in the way of judicial approval.  For instance, the totality of the settlement will be paid out and there is no reversion of any funds to the Defendant.  All deductions from the settlement fund, such as attorneys' fees, settlement administration expenses and Named Plaintiff service awards require judicial approval, and the settlement is not contingent upon approval of the requested amounts. Class members who submit claims to provide their mailing addresses will likely receive substantial monetary compensation.[2]  Class members and other consumers will also receive the non-monetary benefits of the settlement such as the correcting of "Bad Matches," enhancement of "Profile Recency," and improved ability to remove candidate profiles about Class members and other consumers.  *See* discussion, *supra*.

### 3. The Settlement Does Not Grant Preferential Treatment

Preferential treatment is not a concern in this case.  The settlement calls for the certification of a single class, with no sub-classes.  Every class member will be treated

---

[2] Absent a claims process where Class members provide their mailing address, payment to class members would be impracticable.

1   equally and have an equal opportunity to share in the settlement fund.  The settlement does

2   call for modest service awards for the Named Plaintiffs, but those awards are subject to the

3   Court's review and approval.  Furthermore, the Ninth Circuit has recognized that service

4   awards to named plaintiffs in a class action are permissible and do not render a settlement

5   unfair or unreasonable.  *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003);

6   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–69 (9th Cir. 2009).

### 4.      The Settlement Falls Well Within The Range of Approval

8          The settlement in this case is impressive when considering the range of possible

9   recoveries for the Settlement Class and the number of procedural hurdles between Plaintiffs

10  and a final judgment.

11         In light of the potential recovery, the likely recovery is substantial.  Plaintiffs filed

12  this case seeking statutory damages under the FCRA, which provides for between $100 and

13  $1000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  The FCRA itself does not

14  provide any guidance to courts in choosing the appropriate recovery for a statutory

15  violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages

16  to impose pursuant to the FCRA, courts have looked to "the importance, and hence the

17  value, of the rights and protections" at issue in the case.  *Ashby*, 592 F. Supp. 2d at 1318; *In*

18  *re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d at 1224.  A recovery of a substantial

19  percentage of the likely award if this case had proceeded all the way through final judgment

20  is an excellent recovery for the Settlement Class.  *See City of Detroit v. Grinnell Corp.*, 495

21  F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory

22  settlement could not amount to a hundredth or even a thousandth part of a single percent of

23  the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,

24  209 F.3d 43 (2d Cir. 2000).

25         The impressive nature of this recovery comes into even sharper focus when the risks

26  of further litigation are considered.  Plaintiffs would have to win a contested motion for

27  class certification, survive a summary judgment motion and ultimately, prevail at trial.

28  Plaintiffs were confident that these obstacles could have been overcome, but each of these

1    phases of litigation presents risks and represents significant time and costs, which the

2    settlement allows Plaintiffs to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171

3    F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

4         The settlement results in a per person gross recovery amounting to not less than

5    $15.91 per class member, or $11.19 per class member if all requested fees and expenses are

6    granted.  However, the amount each claimant will receive is dependent upon the claims rate

7    because each claimant will receive a pro rata share of the common fund after attorneys' fees

8    and costs, service awards and claims administration costs are deducted.  If the settlement

9    achieves a 10% claims rate the gross per-class member recovery would be at least $159.10.

10   If all requested deductions for attorney's fees and administrative costs are approved, each

11   class member would net approximately $111.90.  The individual settlement amount is

12   generally capped at $500.  Further, the settlement provides significant non-monetary relief

13   for Settlement Class members.

14        These factors combine to compel granting of preliminary approval as both the gross

15   amounts and the net amounts, are well in line with settlement values in similar cases.  *See,*

16   *e.g., Barel v. Bank of Am.*, No. 06-cv-2372, ECF No. 60, Final Approval Order (E.D. Pa.

17   Jan. 16, 2009) (granting final approval to claims-made settlement for 27,350 class members

18   where class members who file a claim form receive four months of credit monitoring

19   services); *Barton v. Specialized Loan Servicing, LLC*, No. 13-cv-2366, ECF No. 52,

20   Stipulation of Settlement (D. Minn. Nov. 17, 2014) (settling for $14.28 per impermissible

21   credit pull); *Holman v. Experian Info. Solutions*, No. 11-cv-180, ECF 243-1, Settlement

22   Agreement (N.D. Cal. Mar. 27, 2014) (settling for class members to receive $375 on claims-

23   made basis, less than 10% of class members ultimately made claims); *King v. United SA*

24   *Fed. Credit Union*, No. 09-cv-937, ECF No. 31, Final Approval Order (W.D. Tex. Oct. 8,

25   2010) (awarding class members $100 and a free credit score on a claims-made basis);

26   *Parthiban v. GMAC*, No. 05-cv-768, ECF No. 103-2, Settlement Agreement (C.D. Cal. Jan.

27   10, 2008) (providing settlement class members with 12 months credit monitoring on a

28   claims made basis); *Phillips v. Accredited Home Lenders Holding Co.*, No. 06-cv-57, ECF

No. 51, Final Approval Order (C.D. Cal. July 17, 2008) (awarding $10 per class member on a claims-made basis); *Sleezer v. Chase Bank USA, N.A.*, No. 07-cv-961, ECF No. 53-1, Settlement Agreement (W.D. Tex. Jan. 12, 2009) (providing identity protection services worth $71.94 per class member on a claim-made basis); *Yeagley v. Wells Fargo*, No. 05-cv-3403, ECF No. 142, Final Approval Order (N.D. Cal. July 23, 2007) (approving settlement that provided for two credit reports and a $50 rebate on first mortgage loan from defendant).

In addition to the generalized uncertainty surrounding all litigation, Plaintiffs in this case faced more specific risks, specifically, Defendant's defenses to willfulness. The claims and factual scenarios brought in this case were novel and there was no case law directly on point that would establish Defendant's liability. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). A FCRA plaintiff can recover only where the defendant has acted negligently or willfully, and where the defendant's violation was at most negligent, recovery is limited to actual damages. *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1). Because they do not allege any actual damages, in order to recover anything, Plaintiffs would have had to prove not only that Defendant violated the FCRA, but that it did so willfully. Throughout this litigation, Defendants have vigorously contested that they are subject to the FCRA, much less that they willfully violated it. Although Plaintiffs believe that these arguments could have been overcome in litigation, Plaintiffs also believe these arguments demonstrate that there were serious obstacles to recovery in this case, a fact which weighs in favor of settlement approval.

Moreover, the settlement in this case was negotiated in the aftermath of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Court reaffirmed that the injury needed for Article III standing could be intangible. *Id.* at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). However, the Court also held that, in order for a plaintiff to have standing, the plaintiff must allege and show more than a "bare procedural violation" because such claims "may result in no harm."

1   *Id.* at 1550.  In litigation, resolving whether the alleged FCRA violations give rise to a

2   concrete harm is yet a further hurdle Plaintiffs would need to overcome.  As a prerequisite

3   to receiving a distribution from the common fund in this settlement, however, each claimant

4   shall aver that he or she believes their statutory rights were violated and that he or she

5   suffered harm as a result thereof.  In any event, although Plaintiffs believe that informational

6   injuries and privacy violations are sufficient to confer Article III standing, *see, e.g.*, *id.* at

7   1549 (reaffirming that informational injury is sufficient to confer Article III standing (citing

8   *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998)), the decision in Spokeo

9   constitutes yet another risk that weighs in favor of the fairness of the settlement.

10          In spite of the numerous risks faced by Plaintiffs and the Settlement Class members,

11   the monetary recovery compares favorably to other settlements, many of which have settled

12   for non-monetary relief.  Moreover, the non-monetary relief here represents a substantial

13   accomplishment in mitigating the harms and future dangers to be endured by the Settlement

14   Class.  Claiming Settlement Class members will receive monetary compensation for their

15   injuries and all Settlement Class members and future subjects of candidate profiles will also

16   receive the benefits of the injunctive relief which will reduce any adverse effects on

17   subjects' employment prospects.  Given that there is a disagreement about injunctive relief

18   being available to private plaintiffs under the FCRA, this accomplishment is remarkable,

19   and may achieve more for class members than could have ever been achieved in litigation.

20   *See Gauci v. Citi Mortgage*, No. CV 11-01387 ODW JEMX, 2011 WL 3652589, at *3 (C.D.

21   Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not

22   obtain injunctive relief under the FCRA.").

23          Viewed in the context of the litigation risks faced, as well as the substantial delay,

24   and costs that Settlement Class members would have experienced in order to receive

25   proceeds from an adversarially-obtained judgment, not to mention the judicial resources

26   required, this settlement is in the best interests of the Named Plaintiffs and the Settlement

27   Class members, and should be approved.

28   **C.   THE COURT SHOULD APPROVE DISSEMINATION OF THE PROPOSED**

1

**CLASS NOTICE.**

2          With this Motion, Plaintiffs have provided the form of proposed class Notice via

3   email.  (Drake Decl., Ex. A at Ex. 2).  This proposed Notice includes all of the information

4   required by Fed. R. Civ. P. 23(c)(2)(B).  Defendant does not have mailing addresses for the

5   Settlement Class, making email combined with targeted internet marketing the best

6   practicable form of notice under the circumstances.  Defendant will provide such email

7   addresses to the settlement administrator who will then endeavor to update the addresses

8   using vendors and databases designed for such purpose.  The Notice, which will be sent via

9   email to all Settlement Class members and will be posted at the settlement website, contains

10  details about the definition of the Settlement Class, the proposed Class Counsel, the size of

11  the settlement fund, the methodology for opting-out of or objecting to the settlement, the

12  potential size of Plaintiffs' request for attorneys' fees, expenses, and class representative

13  service awards, and the date and location of the final approval hearing.  Furthermore, the

14  email addresses will be used to target Settlement Class members using social media such as

15  Facebook.  Given that Defendant's collection of data for candidate profiles included

16  collecting data from various online sources, this supplemental notice effort improves the

17  reach of the Notice program.  Finally, the reminder Notice, which will be sent 15 days prior

18  to the claims deadline, will ensure that Settlement Class members are given a final

19  opportunity to submit claims.  This notice program meets the requirements of Fed. R. Civ.

20  P. 23, and should be approved.  *See In re TD Ameritrade Account Holder Litigation*, No.

21  2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) (overruling objection that mail should have

22  been required in cases where email delivery of notice failed); *see also Kolinek v. Walgreen

23  Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) (overruling objection that e-mail notice does not

24  satisfy Rule 23(c)(2)(B); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 310 F.R.D.

25  300, 307 (E.D. La. 2015) (approving email notice plan using proposed settlement

26  administrator in this case, Angeion Group); *In re Philips/Magnavox Television Litig.*, No.

27  09-cv-3072, 2012 WL 1677244, at *3 (D.N.J. May 14, 2012) (discussing effectiveness of

28  approved notice program relying heavily on email notice); *Kelly v. Phiten USA, Inc.*, 277

F.R.D. 564, 569 (S.D. Iowa 2011) (finding notice program primarily relying on email notice

sufficient under Fed. R. Civ. P. 23(c)(2)); *In re AT&T Mobility Wireless Data Servs. Sales

Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (approving notice plan that would send notice

through publication, email and the defendant's monthly mailings to customers); *Browning

v. Yahoo, Inc.*, No. C-04-1463, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) (email

notice sufficient even if some email addresses of class members had been deleted).

## V.     CONCLUSION

Based on the foregoing, the Court should grant preliminary approval to the proposed

settlement.


Date: November 16, 2016                    BERGER & MONTAGUE, P.C.


                                           /s/E. Michelle Drake
                                           E. Michelle Drake (*pro hac vice*)

                                           ATTORNEYS FOR PLAINTIFFS