NICHOLS KASTER, LLP
Matthew C. Helland, SBN 250451
helland@nka.com
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Tel.: 415.277.7235; Fax: 415.277.7238

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
John G. Albanese, MN Bar No. 0395882*
jalbanese@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999; Fax: 612.584.4470

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb, NY Bar No. JG-7905*
nyjg@aol.com
Dana L. Gottlieb, NY Bar No. DG-6151*
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, NY 10003
Tel.: 212.228.9795; Fax: 212.982.6284

*admitted *pro hac vice*
Attorneys for Individual and Representative Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC HALVORSON, LAURA FERRER, PETER DALLMAN, ROBERT GRANA, DENNIS BULCAO, and NEIL YOUNG, individually and as representatives of the classes,<br><br>        Plaintiffs,<br><br>v.<br><br>TALENTBIN, INC.,<br><br>        Defendant. | Case No.:3:15-cv-05166-JCS<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENTS AND MEMORANDUM IN SUPPORT [UNOPPOSED]**<br><br>Date: July 14, 2017<br>Time: 9:30 AM<br>Location: Courtroom G, 15th Floor<br>Judge: Hon. Joseph C. Spero |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 14, 2017, at 9:30 AM, in Courtroom G on the 15th Floor, at 450 Golden Gate Avenue, San Francisco, California, the Honorable Joseph C. Spero presiding, Plaintiffs Eric Halvorson, Laura Ferrer, Peter Dallman, Robert Grana, Dennis Bulcao, and Neil Young and Class Counsel will respectfully move the Court to award 25% of the Settlement Fund ($287,500) in attorneys' fees, $22,134.76 to reimburse Counsel for out-of-pocket, documented expenses, $2,500 as service payments to each of the six Named Plaintiffs, and $53,450 in settlement administration expenses.

Defendant TalentBin, Inc. does not oppose this Motion.

## MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF THE ISSUE TO BE DECIDED ...........................................1

III.  BACKGROUND ...............................................................................................1

    A.  THE PARTIES ENGAGED IN LITIGATION, DISCOVERY, AND MEDIATION
        BEFORE REACHING THE SETTLEMENT .........................................................1

        1.  Litigation History ..........................................................................1

        2.  Summary of Plaintiffs' Settled Claims Against Defendant ............3

    B.  THE PARTIES' SETTLEMENT AGREEMENT ...................................................4

        1.  Overview of Terms .......................................................................4

        2.  Reaction of Settlement Class Members to the Settlement ............5

        3.  Class Counsel's Fees and Costs to Date .......................................5

IV.  ARGUMENT ....................................................................................................5

    A.  THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND
        COSTS .......................................................................................................5

        1.  The Percentage of the Settlement Fund Requested (25%) Is
            Reasonable ...................................................................................6

            a.  The Monetary and Non-Monetary Results Obtained are
               Significant .........................................................................7

            b.  Effort Expended by Counsel .............................................9

            c.  Counsel's Experience and Skill .........................................9

            d.  Class Counsel Assumed Significant Risks in this Complex
               Litigation .........................................................................9

            e.  The Reaction of the Class to Date is Positive .................11

            f.  Comparison with Class Counsel's Lodestar ....................11

        2.  Class Counsel's Litigation Costs Are Recoverable ......................13

1          B.      THE REQUESTED SERVICE PAYMENTS ARE APPROPRIATE ..........................14

2  V.      CONCLUSION ..................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

<u>Cases</u>

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) .................................................7

*Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713 (N.D. Cal. March 7, 2011) .............13

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ....................11

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................7, 11

*Blum v. Stenson*, 465 U.S. 886 (1984) ..............................................................................12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ................................................................5

*Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109 (N.D. Cal. May 23,
2016) ..................................................................................................................................12

*Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ..11

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) ..................................10

*Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ..8

*Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004) ..........................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................6

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ..............................................................13

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) ...................................................6

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................13

*Klee v. Nissan N. Am., Inc.*, No.12-cv-08238, 2015 WL 4538426 (C.D. Cal.
July 7, 2015) .....................................................................................................................12

*Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367 (N.D. Cal. Feb. 2,
2009) ....................................................................................................................................7

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014) .............................6

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ..............................12

*In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105 (N.D. Cal.
Jan. 30, 2015) ...................................................................................................................12

*McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976 (N.D. Cal. 2009) ............12

*McKenzie v. Federal Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ...............................................................................................................................12

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ....................1

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ........................................................5

*In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801 (N.D. Cal. March 18, 2013) ...............................................................................................................................14

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ...........................................7

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) .............12

*Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134 (1968) ..............................6

*Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ...............................................................6

*Ralston v. Mortg. Investors Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240 (N.D. Cal. Sept. 19, 2013) .....................................................................................................................14

*Razilov v. Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024 (D. Or. Nov. 13, 2006) .....................................................................................................................11, 14

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ............................................................6

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ......................................11

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................6, 14

*Steiner v. American Broad. Co., Inc.*, 248 Fed. Appx. 780 (9th Cir. 2007) ..................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ...........................................................................................................7

*Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385 (N.D. Cal. April 21, 2011) ...............................................................................................................11, 14

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) .............................................................................................13

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..................12

-iv-

*Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL 3929129 (N.D. Cal. July 18, 2013) .................................................................................................................14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .....................................7, 11, 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ..........6, 7, 10

Rules & Statutes

15 U.S.C. § 1681, *et seq.* .............................................................................................*passim*

Fed. R. Civ. P. 23 .................................................................................................................1, 6

1

## I.    INTRODUCTION

2    Pursuant to Fed. R. Civ. P. 23(h), and in accordance with the Court's Preliminary

3    Approval Order (ECF No. 63), Plaintiffs Eric Halvorson, Laura Ferrer, Peter Dallman,

4    Robert Grana, Dennis Bulcao, and Neil Young ("Plaintiffs") and Class Counsel seek

5    approval of an award of 25% of the Settlement Fund in attorneys' fees ($287,500),

6    $22,134.76 to reimburse Counsel for out-of-pocket, documented expenses, $2,500 as

7    service payments to each of the six Plaintiffs, and $53,450 in settlement administration

8    expenses.

9    The requested fees, expenses, and service payments are authorized by the

10    Settlement Agreement (ECF No. 55-1) and reasonable for the reasons set forth below.

11    Defendant TalentBin, Inc. ("Defendant") does not oppose this Motion, nor has any

12    Settlement Class member objected to the proposed awards or any other aspect of the

13    settlement to date.[1]

14

## II.    STATEMENT OF THE ISSUE TO BE DECIDED

15    Whether the requested attorneys' fees, expenses, and service payments are

16    reasonable and should be awarded.

17

## III.    BACKGROUND

18

### A.    THE PARTIES ENGAGED IN LITIGATION, DISCOVERY, AND MEDIATION BEFORE REACHING THE SETTLEMENT

19

20

#### 1.    Litigation History

21    Prior to reaching the Settlement Agreement in this matter, this case was actively

22    litigated.  On October 2, 2015, Plaintiffs filed a Class Action Complaint against Defendant

23    in the San Francisco County Superior Court.  (ECF No. 1-1.)  On behalf of themselves and

24

25    [1] In accordance with the Preliminary Approval Order, Plaintiffs are filing this Motion in advance of the deadline for objections so that Settlement Class members will have an opportunity to review the Motion, if they wish to do so, before deciding whether to file an objection.  *See In re Mecury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (stating that such motions should be filed before the deadline to object has passed). If any objections are ultimately filed, they will be addressed in connection with the forthcoming motion for final settlement approval.

26

27

28

-1-

the proposed classes, Plaintiffs sought statutory damages, plus attorneys' fees, costs, injunctive relief, and all other available relief. (*Id.*) Defendant removed the case to this Court on November 10, 2015. (ECF No. 1.) On February 9, 2016, Defendant filed a Motion for Judgment on the Pleadings as to Plaintiffs' claims under the California Investigative Consumer Agencies Act (ECF No. 27), and subsequently Plaintiffs agreed to amend the complaint to remove those claims, filing the First Amended Complaint ("FAC") on February 23, 2016. (ECF No. 33.) On March 18, 2016, Defendant filed its answer (ECF No. 36) and the parties commenced discovery.

During the discovery phase of this matter, all six Plaintiffs responded to one set of interrogatories and requests for production each, and Defendant responded to one set of interrogatories and requests for production, as well as specific questions regarding its databases. (Declaration of E. Michelle Drake ("Drake Decl.") ¶ 3.) Further, Defendant produced hundreds of pages of documents and more than three thousand candidate profiles, which Plaintiffs processed and reviewed. *Id.* ¶ 4. Throughout discovery, the parties also engaged in meet and confers via correspondence and telephone calls. (*Id.* ¶ 6.)

On August 9, 2016, the parties engaged in an all-day mediation with the Honorable Edward Infante. After a full day of vigorous, arms-length negotiations, the parties reached an agreement as to the material terms of a settlement. (*Id.* ¶ 7.) During mediation, Defendant provided Plaintiffs with additional data and information about the putative class, which enabled Plaintiffs to analyze potential damages. (*Id.*) Further, as part of the settlement terms agreed to at mediation, Plaintiffs were subsequently provided with a sample of 3,594 candidate profiles, which Plaintiffs analyzed to ascertain the prevalence of various terms and phrases that could adversely affect candidates who were seeking employment. (*Id.* ¶ 4.)

The parties did not negotiate any terms relating to attorneys' fees for Class Counsel or service awards for the Named Plaintiffs until after all other material terms of

the Settlement were agreed upon.  (*Id.* ¶ 8.)  In negotiations over subsequent weeks, the parties then formalized a class-wide settlement, which the Court preliminarily approved on January 27, 2017.  (ECF No. 63.)

**2.      Summary of Plaintiffs' Settled Claims Against Defendant.**

Plaintiffs alleged that Defendant, which operates a website and online tool that gathers information from various sources regarding potential job candidates and compiles that information into "candidate profiles," violated the Fair Credit Reporting Act ("FCRA") by: (1) not requiring users of Defendant's service to certify a permissible purpose for use of candidate profiles; (2) not requiring users who intend to use candidate profiles for employment purposes to certify that the users will comply with the FCRA's disclosure and adverse action notice provisions, and that the users will not use the information in the profiles in violation of any state or federal equal employment opportunity laws; (3) not providing users with summaries of consumers' rights under the FCRA either prior to or contemporaneously with the provision of candidate profiles; (4) not providing users with notice of their obligations under the FCRA; and (5) not providing consumers with their full files upon request.   (*See generally* FAC, ECF No. 33.) Defendant denies the allegations and all liability with respect to all facts and claims alleged by Plaintiffs, and specifically avers that the candidate profiles it prepares are not "consumer reports" under the FCRA, and thus the requirements and obligations of the FCRA do not apply to it or its business.  (*See, e.g.*, ECF No. 36.)

The Settlement Class consists of approximately 72,275 consumers on whom Defendant maintained candidate profiles and who either (a) requested from Defendant a copy of his or her profile, or (b) were the subject of a profile, containing at least one email address not known to be bad, that was exported to a Recruiter between October 2, 2013 and August 8, 2016.  (ECF No. 55-1 ¶ 3.1.)  In return for the settlement benefits, the Settlement Class members will release all claims that were raised, or could have been raised, based on the facts alleged in the action.  (*Id.* ¶ 5.1.)

-3-

**B.**   THE PARTIES' SETTLEMENT AGREEMENT

    **1.**   **Overview of Terms**

First, in connection with the settlement of the litigation, Defendant is providing significant non-monetary relief by implementing several business practice changes that will address Plaintiffs' claims.  (ECF No. 55-1 ¶ 8.)  Defendant will revise its Terms of Use to clarify to its potential users that the service is to be used only to identify potential recruitment candidates and to make initial contact with the same, to clarify that users are not permitted to use the candidate profiles as a factor in determining any consumer's eligibility for employment, retention, or promotion, and to prohibit users from reviewing profiles of persons who are employed by the user or have already expressed interest in employment with the user outside of Defendant's service.  (*Id.*)  Defendant is also bolstering protections for the subjects of candidate profiles by permitting consumers to request corrections of bad matches, where Defendant has incorrectly identified the social media profile(s) of two different individuals as belonging to one person, enabling consumers to request their candidate profiles be re-crawled by Defendant's algorithm to update information, improving the ability of consumers to request their profiles be removed permanently, and by adding terms that do not add value to the candidate for users to a "Black List" so they are automatically omitted from profiles.  (*Id.*)

Second, Defendant will create a common fund consisting of $1,150,000 for the benefit of the Settlement Class.  (ECF No. 55-1 ¶¶ 1.27, 6.3.)  This fund will be distributed *pro rata* to all Settlement Class members who submit valid Claim Forms which provide their mailing address, after the deductions for any Court-awarded attorneys' fees and costs, settlement administration costs, and Named Plaintiff service awards.  (*Id.* ¶ 7.)  No portion of the Settlement Fund will revert to Defendant in any circumstance.  If any settlement checks are not cashed, funds associated with those uncashed checks will be donated to the National Consumer Law Center, a non-profit organization that works to improve privacy protections and to provide guidance to courts

and practitioners about the Fair Credit Reporting Act. (*Id.* ¶ 7.4.)  *See generally*, www.nclc.org/about-us.html (site last visited March 8, 2017).

### 2.   Reaction of Settlement Class Members to the Settlement

On February 9, 2017, Angeion Group emailed Notice to the 72,275 Settlement Class members in accordance with the procedures outlined in the Settlement Agreement. On the same date, Angeion also activated the Settlement Website, www.HalvorsonSettlement.com, and a toll-fee telephone line for class members to utilize. On February 9, Angeion also implemented the targeted advertisements on Facebook as outlined in the Settlement Agreement.  As of March 9, 2017, there have been five opt-outs and zero objections received.  The postmark deadline for opt-outs is April 10, 2017, and the deadline for objections is May 1, 2017.

### 3.   Class Counsel's Fees and Costs to Date

To date, Berger & Montague, P.C. has incurred $14,901.87 in costs and $199,599.55 in lodestar, Nichols Kaster, PLLP has incurred $6,888.89 in costs and $33,401.50 in lodestar, and Gottlieb & Associates has incurred $344.00 in costs and $23,590.00 in lodestar.  (Drake Decl. ¶¶ 10-13.)

The requested awards are 25% of the Settlement Fund as attorneys' fees ($287,500), and reimbursement of total out-of-pocket expenses in the amount of $22,134.76.  The requested fees award results in a 1.12 multiplier of Class Counsel's cumulative lodestar to date, which, as outlined below, weighs in favor of the requested amount.

## IV.   ARGUMENT

### A.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS

It is well-settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v.*

*Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This principle is particularly important in complex litigation, where private enforcement is a necessary component of legal compliance. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-3 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such as this one, encourage class actions, and thereby promote private enforcement and compliance with federal consumer protection laws, such as the FCRA.

Courts have encouraged litigants to resolve fee issues by agreement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Federal Rule of Civil Procedure 23(h) expressly states that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Further, the Ninth Circuit has held that "the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003). This Circuit recognizes that "the parties are compromising precisely to avoid litigation." *Laguna v. Coverall North America, Inc.*, 753 F.3d 918, 922 (9th Cir. 2014), *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014).

Here, the parties' Settlement Agreement, which was negotiated under adversarial and non-collusive circumstances, provides for a reasonable award of attorneys' fees of up to 25% of the Settlement Fund and reimbursement of out-of-pocket costs, and those fees and costs should be approved.

### 1. The Percentage of the Settlement Fund Requested (25%) Is Reasonable.

The Ninth Circuit has approved two methods of assigning attorneys' fees in common fund cases: the "percentage of the fund" method and the "lodestar" method.

-6-

1  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re. Wash. Pub.*

2  *Power Supply*, 19 F.3d at 1295-96).  Under the percentage method, the court may award

3  class counsel a percentage of the common fund recovered for the class.  *Id.*  The

4  percentage method is particularly appropriate in common fund cases, because "the benefit

5  to the class is easily quantified."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

6  935, 942 (9th Cir. 2011).  The Ninth Circuit's approved "benchmark" percentage is

7  exactly what Class Counsel is requesting here – 25%.  *Id.* (quoting *Six (6) Mexican*

8  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Courts in this

9  Circuit often award even more than the benchmark percentage, which weighs in favor of

10  Class Counsel's request here.  *See Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009

11  WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) ("in most common fund cases, the award

12  exceeds [the] benchmark"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377

13  (N.D. Cal. 1989) ("nearly all common fund awards range around 30%"); *In re Pac.*

14  *Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of

15  fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692

16  (N.D. Cal. Jan. 14, 2013) (30%).

17      When analyzing a fee request under the percentage method, courts in this Circuit

18  look at: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's

19  experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-

20  payment assumed by counsel; (7) the reaction of the class; (8) non-monetary benefits; and

21  (9) comparison with counsel's lodestar.  *See Vizcaino*, 290 F.3d at 1048-50.  Applied here,

22  all of these factors support Class Counsel's request for 25% of the Settlement Fund.

23          a.  The Monetary and Non-Monetary Results Obtained Are Significant

24      Plaintiffs and Class Counsel achived a noteworthy result in this matter, especially

25  in light of the relatively small individual amounts at issues (the FCRA provides for

26  statutory damages of $100 - $1,000).  The monetary relief achieved for the Settlement

27  Class will result in payments of approximately $131 gross recovery per claiming class

28

-7-

member, assuming a 13% claims rate.[2]  Further, the settlement provides substantive non-monetary relief that directly addresses the claims at issue in the case.  (*See supra* § III.B.1.)   Given that there is a disagreement about whether injunctive relief is even available to private plaintiffs under the FCRA, the non-monetary relief in particular is remarkable, and may achieve more for class members than could have ever been achieved in litigation.  *See Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA.").

Combined, the monetary and non-monetary relief are in line with similar settlements.  *See*, *e.g.*, *Barel v. Bank of Am.*, No. 06cv2372, ECF No. 60, Final Approval Order (E.D. Pa. Jan. 16, 2009) (granting final approval to claims-made settlement for 27,350 class members where class members who filed a claim received four months of credit monitoring); *Holman v. Experian Info. Solutions*, No. 11cv180, ECF No. 243-1, Sett. Agree. (N.D. Cal. Mar. 27, 2014) (settling for $375 per class member on claims-made basis, with a less than 10% claims rate); *King v. United SA Fed. Credit Union*, No. 09cv937, ECF No. 31, Final Approval Order (W.D. Tex. Oct. 8, 2010) (approving claims-made settlement for $100 and free credit score per class member); *Parthiban v. GMAC*, No. 05cv768, ECF No. 103-2, Sett. Agree. (C.D. Cal. Jan. 10, 2008) (settling for 12 months credit monitoring per class member on claims-made basis); *Phillips v. Accredited Home Lenders Holding Co.*, No. 06cv57, ECF No. 51, Final Approval Order (C.D. Cal. July 17, 2008) (approving $10 per class member claims-made settlement); *Sleezer v. Chase Bank USA, N.A.*, No. 07cv961, ECF No. 53-1, Sett. Agree. (W.D. Tex. Jan. 12, 2009) (settling for $71.94 worth of identity protection per class member, claims-made).

Accordingly, these factors weigh in favor of granting the requested fee award.

---

[2] To date, 9,501 claims have been received, which is a claims rate of approximately 13%. However, these claims are still in the process of being verified so this number may decrease prior to final approval.  (Drake Decl. ¶ 18.)

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b. Effort Expended by Counsel

This action was vigorously litgated by both sides before the parties settled.  As described above in the Background section, the parties engaged in discovery, detailed analysis of data provided by Defendant, and informed settlement negotiations.  Given the time devoted to litigating and settling this action, this factor weighs in favor of the requested award.

### c. Counsel's Experience and Skill

Class Counsel are highly experienced in complex class action litigation and consumer litigation in general.  (*See* ECF Nos. 55-2, 55-3, 55-4.)  Berger & Montague, P.C. was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since.  (ECF No. 55-2.)  The firm has been recognized by courts for its skill and experience in handling major complex litigation.  (*Id.*)  Berger has been recognized by The National Law Journal in 11 of the last 15 years for its "Hot List" of top plaintiffs' oriented litigation firms in the nation.  (*Id.*)  Lead counsel from Berger, E. Michelle Drake, has worked extensively on FCRA class actions, and John G. Albanese, also from Berger, has concentrated his practice on FCRA litigation as well, and both are counsel of record in many active FCRA cases throughout the country.  (*Id.*)  Nichols Kaster, LLP and Gottlieb & Associates are similarly dedicated to representing consumers in class actions and have extensive FCRA experience.  (ECF Nos. 55-3, 55-4.)

Class Counsel's substantial litigation skills were necessary to bring this action to a successful conclusion.  Counsel thoroughly investigated Plaintiffs' claims, analyzed documents and data and used them to Plaintiffs' advantage at settlement negotiations, and ultimately settled this matter on terms that are highly favorable to the Settlement Class.

### d. Class Counsel Assumed Significant Risks in this Complex Litigation

The requested fee award is even more reasonable considering the complexity of the litigation, and the risks that Class Counsel assumed in undertaking the representation

-9-

1    on a contingent fee basis.  Class action litigation is inherently complicated and time-

2    consuming.  On top of the demands that come with this type of litigation, Class Counsel

3    also had to be prepared to make this investment with the very real possibility of an

4    unsuccessful outcome and no fee recovery of any kind.  The Ninth Circuit has recognized

5    the importance of rewarding attorneys who take cases on a contingency basis.  *In re Wash.*

6    *Pub. Power Supply*, 19 F.3d at 1299 ("[c]ontingent fees that may far exceed the market

7    value of the services if rendered on a non-contingent basis are accepted in the legal

8    profession as a legitimate way of assuring competent representation for plaintiffs who

9    could not afford to pay on an hourly basis regardless whether they win or lose."); *see also*

10   *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 157(Cal. 2004) ("[a] contingent fee

11   must be higher than a fee for the same legal services paid as they are performed.  The

12   contingent fee compensates the lawyer not only for the legal services he renders but for

13   the loan of those services.") (internal citations omitted).

14          The claims and factual scenarios brought in this case were novel and there was no

15   case law directly on point that would establish Defendant's liability.  The FCRA is not a

16   strict liability statute.  *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir.

17   2001).  A FCRA plaintiff can recover only where the defendant has acted negligently or

18   willfully, and where the defendant's violation was at most negligent, recovery is limited to

19   actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1).  Because they do not allege

20   any actual damages, in order to recover anything, Plaintiffs would have had to prove not

21   only that Defendant violated the FCRA, but that it did so willfully.  Throughout this

22   litigation, Defendant has vigorously contested that it willfully violated the FCRA, arguing

23   that its candidate profiles are not "consumer reports" under the FCRA, thus the FCRA's

24   provisions do not apply.  Plaintiffs believe that these arguments could have been

25   overcome in litigation, but also believe they demonstrate that there were serious obstacles

26   to recovery in this case.

27

28

-10-

1    Thus, the complexity and risks involved in this matter weigh in favor of Class

2    Counsel's requested fees.

3                    e.   The Reaction of the Class to Date is Positive

4    Notice of the settlement, including the proposed amounts to be requested in fees,

5    costs, and service payments, was emailed on February 9, 2017 to 72,275 individuals.  Not

6    a single class member has filed an objection to the requested fee award to date, and only

7    five have opted-out.  (Drake Decl. ¶ 14.)  This factor supports the requested award.

8    *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding

9    only one opt-out and zero objections from 1,837 class members favored awarding 33% of

10   the common fund); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL

11   3312024, at *3 (D. Or. Nov. 13, 2006) (finding 27 opt-outs out of 60,000 class members

12   weighed in favor of granting fee award in excess of 25% benchmark); *Thieriot v. Celtic

13   Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385, at *6 (N.D. Cal. April 21, 2011) ("[t]he fact

14   that no members of the 390-person class objected to the proposed 33% fee award – which

15   was also communication in the notice – supports an increase in the benchmark rate.").

16                   f.   Comparison with Class Counsel's Lodestar

17   A comparison with Class Counsel's lodestar further demonstrates that the

18   requested fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can

19   be helpful in suggesting a higher percentage when litigation has been protracted").  The

20   "cross-check calculation need entail neither mathematical precision nor bean counting . . .

21   [courts] may rely on summaries submitted by the attorneys and need not review actual

22   billing records."  *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516, at *21-22

23   (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-7 (3d

24   Cir. 2005)).

25   The lodestar method is calculated by multiplying "the number of hours . . .

26   reasonably expended on the litigation . . . by a reasonable hourly rate."  *In re Bluetooth

27   Headset*, 654 F.3d at 941.  In considering rates, courts examine the rate "prevailing in the

28

-11-

1  community for similar services by lawyers of reasonably comparable skill, experience,

2  and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Here, Class Counsel's

3  hourly rates are comparable to those approved in this District, and in California in general.

4  *See In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105, at *12

5  (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range

6  from $560 to $800, for associates from $285 to $510, and for paralegals and ligitation

7  support staff from $150 to $240") (citing cases); *see also Bohannon v. Facebook, Inc.*, No.

8  12-cv-1894, 2016 WL 2962109, at *5-6 (N.D. Cal. May 23, 2016) (approving attorney

9  hourly rates of $525-800); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92

10  (N.D. Cal. 2015) (approving attorney rates from $335 - 685); *Klee v. Nissan N. Am., Inc.*,

11  No. 12-cv-08238, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015) (approving rates of

12  $370 to $695); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D.

13  Cal. 2010) (approving rates of $445 – 675).

14  Class Counsel's detailed fee records are attached to the Drake Declaration, with

15  redactions for privilege.  (Drake Decl., Exs. A-C.)  To date, Counsel's cumulative lodestar

16  is $256,591.05.  (Drake Decl. ¶ 13)  The lodestar cross-check of the percentage requested

17  thus results in a multiplier of just over 1.  Multipliers of 1 to 4 are commonly awarded in

18  complex class action cases in this Circuit.  *See Vizcaino*, 290 F.3d at 1051, n. 6 (finding

19  that in approximately 83% of cases surveyed by the court, the multiplier was between 1.0

20  and 4.0 and affirming a multiplier of 3.65); *McIntosh v. McAfee, Inc.*, No. 06-cv-7694,

21  2009 WL 673976, at *2 (N.D. Cal. 2009) (recognizing a range from "2 to 4 or even

22  higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995)

23  ("[m]ultipliers in the 3-4 range are common"); *Steiner v. American Broad. Co., Inc.*, 248

24  Fed. Appx. 780, 783 (9th Cir. 2007) (affirming multiplier of 3.65); *McKenzie v. Federal

25  Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (approving

26  multiplier of 3.2).

27

28

1      The lodestar cross-check thus confirms the reasonableness of the requested fee

2  award.

3              **2.     Class Counsel's Litigation Costs Are Recoverable**

4      Class Counsel also seek, and Defendants do not oppose, reimbursement of

5  documented, out-of-pocket, expenses incurred in litigating and settling this matter.  *See*

6  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-

7  pocket expenses that would normally be charged to a fee paying client") (internal citations

8  omitted); *Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713, at *3 (N.D. Cal. March 7,

9  2011) (finding "costs of reproducing pleadings, motions and exhibits are typically billed

10 by attorneys to their fee-paying clients" and are thus reimbursable); *Trustees of Const.*

11 *Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59

12 (9th Cir. 2006) (legal research costs reimbusable); *In re Immune Response Secs. Litig.*,

13 497 F. Supp. 2d 1166, 1177-8 (S.D. Cal. 2007) (mediation expenses, expert fees, legal

14 research, copies, postage, filing fees, messenger, and federal express costs reimbursable);

15 *Marhoefer*, 24 F.3d at 19 (postage costs reimbursable).

16     As Counsel's expense records show, all of the costs incurred were reasonable and

17 necessary to the successful conclusion of this litigation.  (*See* Drake Decl., Exs. A-C.)

18 These costs include: filing fees, legal research, service of process, expert fees, mediation

19 expenses, and FedEx costs.  These types of expenses are routinely reimbursed by the

20 courts as noted above, thus Counsel's requested costs of $22,134.76 should be awarded.

21     In addition, Angeion Group, who this Court appointed to administer the

22 settlement, reasonably expects to incur $53,450 by the end of the settlement

23 administration process.  (Drake Decl. ¶¶ 16-17.)  This amount is in line with the industry,

24 as Angeion was chosen after a competitive bidding process and should be approved to be

25 paid from the Settlement Fund.  (Drake Decl. ¶¶ 15-17.)

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.** **THE REQUESTED SERVICE PAYMENTS ARE APPROPRIATE**

The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable service awards. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases.").   Such awards are intended to compensate class represenatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general. *Id.* at 958-59.

In evaluating requests for service awards, the court should consider "relevant factors including 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Thieriot*, 2011 WL 1522385 at *7 (quoting *Staton*, 327 F.3d at 977).  Here, all of these factors support the requested awards.  Plaintiffs have expended significant time and effort in this matter, consistently putting the class members' interests first.  All six Plaintiffs provided written discovery responses and extensive documentation regarding their experiences with Defendant, were prepared to travel and sit for depositions, stayed abreast of developments in the case, and evaluated the Settlement Agreement.  (*See* Declarations of Named Plaintiffs.)  As a result of Plaintiffs' efforts, and their willingness to pursue this action, substantial benefits have been achieved on behalf of the Settlement Class.

Moreover, the requested service payments of $2,500 to each Plaintiff are relatively modest compared to awards granted in other complex litigation in this Circuit.  *See, e.g.*, *Razilov*, 2006 WL 3312024 at *2-4 (approving incentive award of $10,000); *Ralston v. Mortg. Investors Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19, 2013) (approving service payment of $12,500); *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801, at *11 (N.D. Cal. March 18, 2013) (approving service awards of $6,000 for each named plaintiff); *Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-

-14-

cv-0963, 2013 WL 3929129, at *7 (N.D. Cal. July 18, 2013) (approving serive awards of $25,000 and $35,000).

Accordingly, the service awards are fully justified, reasonable, and should be awarded.

**V.     CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant Class Counsel's requested awards of 25% of the Settlement Fund as attorneys' fees ($287,500), $22,134.76 in costs, service payments to each of the six Plaintiffs of $2,500, and $53,450 in settlement administration expenses.


Date: March 9, 2017                    BERGER & MONTAGUE, P.C.


                                       /s/E. Michelle Drake
                                       E. Michelle Drake (*pro hac vice*)

                                       ATTORNEYS FOR PLAINTIFFS

-15-